*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TREVOR M., | ) | |
| | ) | Supreme Court No. S-15913 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-00036 CN |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | No. 7086 - March 11, 2016 |
| OFFICE OF CHILDREN'S | ) | |
| SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Joanne M. Grace, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Winfree, Maassen, and Bolger, Justices. [Stowers, Chief Justice, not participating.]

MAASSEN, Justice.

I.      INTRODUCTION

        The Office of Children's Services (OCS) took custody of a young girl due to her mother's neglect and substance abuse. The father was incarcerated at the time, but on his release he made limited efforts to participate in his case plan. OCS filed a petition

to terminate his parental rights, asserting that he had abandoned his daughter, and the superior court granted the petition and terminated his rights. The father appeals, arguing that he did not abandon his daughter and that if he did he was not given enough time to remedy the problem. Because the superior court's findings are not clearly erroneous, we affirm.

## II.    FACTS AND PROCEEDINGS

Maya S. is the three-year-old daughter of Sarah S. and Trevor M.[1] Trevor's criminal history includes a number of assault charges and domestic violence restraining orders involving different victims;[2] he has also struggled with substance abuse. He testified that he "rarely got to see" Maya while she was a baby because it was up to Sarah to decide "when she felt like bringing [him his] daughter." He also testified, however, that he "always call[ed] [Sarah] to check on [his] daughter" and that he gave "her money plenty of times for whatever she needed."

OCS twice removed Maya from Sarah's custody after receiving reports of neglect — once in October 2012, when Maya was five months old, and again in December 2013. Each time OCS placed Maya with her maternal grandparents, Dennis S. and Sylvia E. The second time OCS took custody, Maya had cocaine in her system at such a high level that it was determined she had probably ingested the drug. Trevor was in jail at the time for assaulting Sarah. Since then, Maya has remained with her maternal grandparents.

---

[1]    We use pseudonyms to protect the parties' privacy.

[2]    For example, in 2012 Trevor was convicted of assaulting his then-girlfriend, the mother of his other child; in 2013 Sarah accused him of assaulting her; and in 2014 a different girlfriend was granted a long-term domestic violence protective order based on the finding that Trevor posed a threat to her safety.

In February 2014 OCS assigned caseworker Rick Mitcham to Maya's case. Mitcham met with Trevor a few weeks later, after Trevor's release from prison. Trevor said he was willing to participate in anger management classes; also included in his case plan were a substance abuse assessment and regular urinalyses (UAs).

Mitcham and Trevor met again on March 1. Mitcham described Trevor as "receptive to engaging in services" at that time, and after the meeting Mitcham made a referral for supervised visitation. For the rest of the month Mitcham and another OCS worker tried to contact Trevor to follow through with the referral, but Trevor never answered the phone or returned messages. On March 27 Mitcham made an unannounced visit and found Trevor at home; he talked to Trevor "about the case and about . . . setting up the family contact." According to Mitcham, Trevor still seemed willing to engage with his case plan.

But Trevor failed to show up for an April meeting with Mitcham, and they did not meet again until May. At that time they discussed Trevor's case plan again, but Trevor was reluctant to pursue it because he believed he was likely to be reincarcerated soon, making his efforts pointless. Around this time another OCS worker made a number of attempts by telephone to facilitate visitation, but Trevor's phone was disconnected.

Trevor and Mitcham met again in early June. By this time Trevor had learned he was not going back to jail, and he again seemed willing to follow his case plan and to submit to the required UAs. He signed the plan and records releases for anger management classes and a substance abuse assessment. But after this meeting OCS was again unable to reach him to coordinate a visitation schedule, despite many attempts.

Trevor did attend a substance abuse assessment and another assessment for a batterers' intervention program. The batterers' program met once a week for 36 weeks. Trevor attended two classes in June, three in July, one in August, and two in October,

after which he was discharged from the program because of unexcused absences. His experience with substance abuse treatment was similar. He did not follow up on the assessment's recommendations for intensive outpatient treatment; he later testified that he had limited funds to put toward his rehabilitation and chose to spend them on the batterers' intervention course instead. He testified that he discussed this decision with Mitcham and another OCS employee and they understood his reasoning — though Mitcham declined to confirm this. Trevor missed most of the scheduled UAs, showing up for only four of 26 appointments and twice testing positive for marijuana.

In late June Trevor gave Mitcham his new phone number, and OCS was able to schedule weekly visitation. Trevor visited Maya three times: on July 1, 17, and 31. Regular visitation was then suspended because Trevor started a new job on the North Slope. Although OCS had instructed him that he would need to call to restart visitation when he returned, it did not hear from him again and was unable to reach him despite continued efforts. In October OCS petitioned to terminate Trevor's and Sarah's parental rights.

In January 2015 Trevor was again incarcerated. Sarah voluntarily relinquished her rights to Maya, and in March the superior court held a two-day trial on Trevor's parental rights. Trevor participated telephonically from jail. He had not had any contact with Maya since his last visit in July 2014, seven and a half months earlier.

At trial, two OCS employees described their unsuccessful attempts to contact Trevor and facilitate visitation from March to the end of June 2014; one testified about the further loss of contact following Trevor's three visits with Maya in July. Mitcham testified that he had explained to Trevor when they first met that time was of the essence, and that Trevor appeared to understand. But Mitcham also testified that after he last met with Trevor in June 2014 he was unable to reach him again.

Maya's maternal grandfather, Dennis, testified that he had provided all of Maya's financial support since her birth and that he had never asked for or received any help from Trevor. He testified that Maya never asked about Trevor and that to his knowledge Trevor had spent time with Maya maybe ten times in her life.

Trevor testified on his own behalf. He explained that he had rarely seen Maya when she was a baby because Sarah limited his access. He testified that participating in his case plan was difficult because he had no driver's license, had started a new job in June 2014, and had trouble paying for classes. He denied that Mitcham had told him time was of the essence. But he acknowledged OCS's offer to provide him a bus pass, which he never picked up, and he admitted that OCS never denied him visitation.

The superior court terminated Trevor's parental rights to Maya, making both oral and written findings. The court found by clear and convincing evidence that Trevor had abandoned Maya without justifiable cause, that he had failed to remedy the conduct or conditions that put Maya at a substantial risk of harm, and that OCS had made reasonable efforts to provide services designed to enable Maya's return to Trevor's custody and care. Finally, the court found by a preponderance of the evidence that terminating Trevor's parental rights was in Maya's best interests.

Trevor appeals, challenging the superior court's findings that he abandoned Maya and that he had a reasonable time to remedy the conduct that put her at risk of harm.

## III. STANDARD OF REVIEW

"In a CINA case, 'we review the trial court's factual findings for clear error and its legal determinations de novo.' "[3] "Conflicting evidence is generally not sufficient

---

[3]    *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*,
(continued...)

to overturn a trial court's factual findings . . . ."[4]  "Whether a child is in need of aid, [and] whether a parent has remedied the conditions that place the child in need of aid . . . are factual determinations."[5]  "Whether factual findings satisfy the requirements of the applicable child in need of aid (CINA) statute is a question of law that we review de novo."[6]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Clearly Err In Finding That Trevor Abandoned Maya By Failing To Maintain Regular Visitation.

Before terminating parental rights, a superior court must find by clear and convincing evidence that "the child has been subjected to conduct or conditions described in AS 47.10.011."[7]  Among the described "conduct or conditions" is that the "parent or guardian has abandoned the child as described in AS 47.10.013, and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter."[8]  The referenced statute, AS 47.10.013, in turn

---

[3](...continued)
343 P.3d 425, 430 (Alaska 2015) (quoting *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 849 (Alaska 2014)).

[4]      *Emma D.*, 322 P.3d at 849 (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 856 (Alaska 2013)).

[5]      *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 948-49 (Alaska 2013) (footnotes omitted).

[6]      *Theresa L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 353 P.3d 831, 837 (Alaska 2015) (citing *Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 246 P.3d 916, 920 (Alaska 2011)).

[7]      AS 47.10.088(a)(1).

[8]      AS 47.10.011(1).  Trevor does not dispute that Sarah, Maya's other parent,
(continued...)

identifies eight ways in which abandonment may occur.  In this case the superior court found that Trevor abandoned Maya in four of those ways, each corresponding to a different subsection of the abandonment statute:  (1) he failed to maintain regular visitation for more than six months;[9] (2) he failed to participate in his case plan;[10] (3) he was absent from the home for a period of time that put Maya at risk of harm;[11] and (4) he was unwilling to provide Maya care, support, or supervision.[12]  Trevor argues that these findings are clearly erroneous.

As OCS correctly observes, the various ways abandonment can be shown under AS 47.10.013(a) are listed disjunctively, and a single adequately supported finding is therefore enough to establish that Maya was a child in need of aid.[13]  Because the

---

[8](...continued)
was absent or caused Maya to be in need of aid for purposes of this provision.

[9]     AS 47.10.013(a)(3) provides that abandonment may be found "when the parent or guardian, without justifiable cause, . . . failed for a period of at least six months to maintain regular visitation with the child."

[10]     AS 47.10.013(a)(4) provides that abandonment may be found "when the parent or guardian, without justifiable cause, . . . failed to participate in a suitable plan or program designed to reunite the parent or guardian with the child."

[11]     AS 47.10.013(a)(6) provides that abandonment may be found "when the parent or guardian, without justifiable cause, . . . was absent from the home for a period of time that created a substantial risk of serious harm to a child left in the home."

[12]     AS 47.10.013(a)(8) provides that abandonment may be found "when the parent or guardian, without justifiable cause, . . . was unwilling to provide care, support, or supervision for the child."

[13]     *See Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1112 (Alaska 2010) ("Because we affirm the trial court's findings with respect to Lucy's drug and alcohol abuse and neglect of the children, we do not reach whether Lucy failed to remedy the other two grounds for finding that Jack and

(continued...)

superior court's first abandonment finding — that Trevor failed "to maintain regular visitation" for six months "without justifiable cause" — is not clearly erroneous, we affirm the superior court's decision of this issue.

The superior court found that Trevor last visited Maya on July 31, 2014, seven and a half months before trial.[14] The court found that Trevor knew how to set up visitation thereafter but failed to do so even though OCS continued to try to engage him: according to the court, "[e]ssentially, [Trevor] dropped off the face of the child's world" after July. The court recognized that Trevor was back in jail as of January 2015, but it found that his failure to pursue visitation was nevertheless not justified.

Trevor does not dispute the superior court's finding that he failed to visit Maya at all for more than seven months immediately before trial, nor does he argue that this failure had a "justifiable cause." Instead he argues that the months immediately preceding trial cannot count toward the abandonment period, "because the State also must prove by clear and convincing evidence that [he] has had a reasonable opportunity to remedy the abandonment. And if this period immediately prior to the termination trial is the basis of an abandonment finding, there can necessarily be no opportunity for [him] to remedy the conduct." Trevor contends, in other words, that before parental rights may be terminated for abandonment under AS 47.10.013(a)(3), the six months set by statute must be followed by another undefined period during which the parent may remedy the

---

[13](...continued)
Carmen were in need of aid."); *see also Dan A. v. State, Dep't of Health & Human Servs., Office of Children's Servs.*, No. S-14249, 2012 WL 104482, at *5 (Alaska Jan. 13, 2012) ("Because we uphold the termination based on abandonment under AS 47.10.013(2) and (3), we do not reach either Dan's appeal of the superior court's abandonment findings under subsections (4) and (7) or OCS's cross-appeal.").

[14]    *See* AS 47.10.013(a)(3) (defining abandonment to include failing "for a period of at least six months to maintain regular visitation with the child").

problem — essentially that an abandonment finding requires the statutory six months *plus* X.

We do not consider this to be a reasonable reading of the statute. Abandonment may place a child at substantial risk even if for a day, a week, or a month. Although a lapse in regular visitation must last six months before it may be the basis of an abandonment finding under AS 47.10.013(a)(3), in most circumstances a responsible parent can be expected to attempt to remedy the conduct within that six-month period. We do not believe the legislature could have intended the end of the six-month period to mark only the beginning of a parent's duty to remedy the conduct that put the parent's child at risk.

In any event, AS 47.10.013(a)(3) gauges abandonment not by a complete failure of visitation but by a failure "to maintain *regular* visitation." (Emphasis added.) In this case the evidence was undisputed that Trevor visited Maya only three times — all in a single month — during the 15 months between December 2013, when OCS last took custody of her, and March 2015, when trial occurred. Even excluding the periods of Trevor's incarceration, there were still 11 months during which he failed to visit Maya at all while she was in OCS custody. And it was undisputed that OCS consistently tried to set up a visitation schedule as early as March 2014, without success.

The evidence plainly supports a finding that Trevor rarely visited his daughter, made little effort to do so regularly at any time in her life, and failed to take advantage of the scheduled visitation arranged by OCS. Our conclusion is thus the same whether the six months of failed regular visitation is calculated from Maya's birth, from the second time OCS removed her from Sarah's custody, or from Trevor's last visit in

July 2014: The superior court did not clearly err in finding that Trevor "failed for a period of at least six months to maintain regular visitation with the child." [15]

## B. The Superior Court Did Not Clearly Err In Finding That Trevor Failed To Remedy The Conduct That Placed Maya At Risk Of Harm.

Closely related to Trevor's challenge to the superior court's abandonment finding is his challenge to the finding that he failed to remedy, "within a reasonable time," the problem of abandonment that caused Maya to be a child in need of aid. [16]  Trevor first argues that OCS could not have proven that he failed to remedy his conduct within a reasonable time because abandonment occurred during the seven months immediately before trial; we address this argument in section IV.A above and reject it.  Trevor argues alternatively that even if abandonment occurred earlier, OCS's "rushed timetable . . . [for] his case plan did not provide a reasonable opportunity to demonstrate that he had remedied his conduct."  He supports this argument by identifying cases in which OCS waited longer before filing a petition to terminate parental rights [17] and cases in which parents whose conduct was arguably worse than his were given more time to remedy their

---

[15]    AS 47.10.013(a)(3).

[16]    AS 47.10.088(a)(2)(B) (stating that before terminating parental rights, the court must find by clear and convincing evidence that the parent "has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury").

[17]    *See Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-15075, 2014 WL 72730, at *1-2 (Alaska Jan. 8, 2014) (stating that OCS took custody in May 2010 and petitioned to terminate in February 2012); *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 53-54 (Alaska 2001) (stating that OCS took custody in July 1995 and petitioned to terminate in July 1999).

conduct.[18]  He further argues that his time to remedy his conduct was unreasonably short because OCS failed to inform him about the case timelines and the need for urgency.[19]

"A reasonable time is statutorily defined as 'a period of time that serves the best interests of the child, taking in account the affected child's age, emotional and developmental needs, and ability to form and maintain lasting attachments.' "[20]  Any fact relating to the child's best interests is relevant to the determination.[21]  The determination "must be made on a case-by-case basis and the amount of time considered 'reasonable'

---

[18]     *See Lance H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-14510, 2012 WL 3870821, at *2-6 (Alaska Sept. 5, 2012) (stating that OCS took custody in September 2008 and termination trial occurred in August 2011); *Dan A. v. State, Dep't of Health & Human Servs., Office of Children's Servs.*, No. S-14249, 2012 WL 104482, at *2-3 (Alaska Jan. 13, 2012) (stating that OCS took custody in January 2007 and termination trial began in October 2009); *Jeff A.C., Jr. v. State*, 117 P.3d 697, 700-02 (Alaska 2005) (stating that OCS took custody in February 2001, State petitioned to terminate parental rights in March 2002, and termination trial began in March 2003).

[19]     Mitcham testified, on the other hand, that Trevor understood that time was of the essence.  We defer to the trial court's resolution of conflicts in testimony. *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 849 (Alaska 2014).

[20]     *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1240 (Alaska 2015) (quoting AS 47.10.990(28)).

[21]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1268 (Alaska 2014) (citing AS 47.10.088(b)).  *See also Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263 (Alaska 2010) ("[T]he superior court . . . is permitted to 'consider any fact relating to the best interest of the child, including' the statutory factors, when evaluating whether a parent has remedied his or her conduct." (quoting AS 47.10.088(b))).

will vary";[22] it "is likely to be shorter for young children."[23] "The superior court is entitled to rely on a parent's documented history of conduct as a predictor of future behavior."[24]

In this case the superior court made extensive findings relevant to whether OCS gave Trevor a reasonable time to remedy his conduct, in light of Maya's best interests. The court noted Trevor's extensive criminal record, Maya's young age and need for permanency, Trevor's failure to engage in services, and the likelihood that resolving his legal issues would take a long time. The court found that Trevor's failure to attend substance abuse treatment, his limited participation in batterers' intervention classes, and his recent criminal convictions established that his efforts to remedy his conduct were minimal.[25] It found based on his history that Trevor's harmful conduct was likely to continue[26] and that it was unlikely Maya could return to his care within a

---

[22] *Christina J. v. State, Dep't of Health & Soc Servs., Office of Children's Servs.*, 254 P.3d 1095, 1108 (Alaska 2011).

[23] *Id.* at 1107.

[24] *Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268, 1274 (Alaska 2014) (quoting *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003)).

[25] *See* AS 47.10.088(b)(2) (stating that the court can consider "the amount of effort by the parent to remedy the conduct").

[26] *See* AS 47.10.088(b)(4)-(5) (stating that the court may consider "the likelihood that the harmful conduct will continue" and "the history of conduct by . . . the parent").

reasonable time.[27] It found that Maya did not know her father and that she would continue to be harmed as long as she was deprived of a parent.[28]

On appeal Trevor does not challenge the superior court's discussion of Maya's best interests, nor does he discuss Maya's needs. He fails to demonstrate that the superior court clearly erred in finding that he made minimal attempts to change his conduct, that he was unlikely to be available to parent Maya in the reasonably foreseeable future, and that Maya's best interests favored permanency.

Because the evidence supports the superior court's findings that (1) Trevor failed to remedy the conduct or conditions that put Maya at risk of harm, and (2) the time Trevor was given to remedy his conduct was reasonable given Maya's best interests, including her need for permanency, we conclude that the superior court did not clearly err in finding grounds for termination.

## V.    CONCLUSION

We AFFIRM the superior court's decision to terminate Trevor's parental rights.

---

[27]    *See* AS 47.10.088(b)(1) (stating that the court may consider "the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs").

[28]    *See* AS 47.10.088(b)(3) (stating the court may consider "the harm caused to the child").