NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL A.P., | ) | |
| | ) | Supreme Court No. S-16593 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-15-00099 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT[*] |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1664 – January 31, 2018 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Jane F. Kauvar, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. Aisha Tinker Bray, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

## I.     INTRODUCTION

A four-month-old child was taken into custody by the Office of Children's Services (OCS) following reports of a disturbance at the father's home and concerns about the dangerous condition of the home. The child tested positive for

_____

[*]     Entered under Alaska Appellate Rule 214.

methamphetamine, amphetamine, and marijuana. The father participated in visitation and remedied the condition of his home but failed to complete any other aspect of his case plan. Despite the danger the mother posed to the child due to her mental health, substance abuse, and domestic violence issues, the father failed to take steps to obtain a protective order, permitted her to sleep on his couch at least once a month, and testified at trial that he might be the father of the child she was three or four months pregnant with. Their parental rights were terminated, and the father appeals. We affirm.

## II. FACTS AND PROCEEDINGS

Gina was born in March 2015 to Ann H. and Michael A.P.,[1] an unmarried couple in an on-and-off relationship. Gina tested positive for marijuana at birth. On July 1, 2015, Alaska State Troopers responded to a disturbance at Michael's home; they made a report to OCS because of the dangerous condition of the home and concerns about Gina's exposure to domestic violence. OCS responded and found the home in disarray, with overturned mattresses, garbage strewn throughout, and a container of diesel on top of a heating device. Michael later testified that this was not the normal condition of the home and that Ann had entered "two minutes before [the police] did and . . . went through like a tornado . . . [and] turned everything upside down." But one of his own witnesses testified about the chaotic state of the home when she had visited in the past. An OCS caseworker testified that Gina's designated sleeping area was unsafe, with "diapers and toys and a bunch of different things in it."

The OCS worker also testified that Michael appeared to be under the influence because of his erratic behavior (for example, "moving [Gina] back and forth really fast between his arms"), quickly changing emotions, and rapid speech. After she asked him whether he was under the influence, he told her that he had used

---

[1]     Pseudonyms are used for all family members.

methamphetamine within the last two weeks and that Ann had used methamphetamine that morning. He refused drug testing. OCS took emergency custody of Gina and filed a petition for temporary custody. Gina tested positive for methamphetamine, amphetamine, and marijuana on a July 7 hair strand test.

OCS instituted a case plan for Ann and Michael with a goal of reunification with Gina. Both parents were offered a number of services, "including drug testing, substance abuse counseling, parental risk assessments, psychological evaluations, behavioral health assessments, anger management treatment, mental health counseling, referrals to other service providers, paternity testing, transportation, and visitation."

Ann did not participate in any of the services offered except for one psychological/parental risk assessment in May 2015, which predated Gina's July 2015 removal and was in connection with the child protection matter involving another of Ann's children. She attended only 10 of 23 scheduled visits with Gina, she acted erratically and aggressively toward OCS staff members, and her visitation was suspended after she threatened and verbally assaulted a staff member in November 2015. Ann had a history of substance abuse, and she and Michael had a history of domestic violence involving physical violence and multiple police responses. Ann's other relationship partner, Ben A., was also involved in a number of incidents, including one where Michael claimed Ben put a gun in his face; at the time of the September 2016 termination trial, Michael had an assault charge pending against him for allegedly punching Ben in the head in Ann's presence.

Michael participated minimally in his case plan, but he was relatively consistent in exercising his visitation with Gina and acted appropriately during the visits. He also cleaned up his home and participated in case plan meetings. However, he failed to participate in any other aspect of his case plan. For example, he refused to submit to random urinalysis (UA) testing and also refused a hair strand test. Days before his

termination trial, Michael requested a UA (non-random test) and tested positive for marijuana. He testified that he occasionally smoked marijuana but that he would not smoke it around Gina. The superior court found that concerns about his "substance abuse are also supported by prior drug-related convictions where [he] tested positive for marijuana and methamphetamine."

Michael failed to participate in many other services in his case plan, "including parental risk assessments, LEAP behavioral health evaluations (a form of anger management therapy), mental and behavioral health evaluations," a substance abuse assessment, individual mental health and substance abuse counseling, and parenting classes. He testified "that he was unable to contact anyone at these service agencies over the 15[-]month period that [Gina] ha[d] been in OCS custody." He had one appointment scheduled with LEAP but did not show up for it. And he continued his relationship with Ann, permitting her to sleep on his couch at least once a month, including as recently as a month and a half before the termination trial. He testified that he was no longer in a romantic relationship with her but that he might be the father of the child she was "probably three or four months pregnant" with at the time of the termination trial.

The parental rights termination trial was held in September 2016. In December the court issued its decision finding Gina in need of aid under AS 47.10.011(1) (abandonment), (6) (physical harm), (8) (mental injury), (9) (neglect), (10) (addictive or habitual use of an intoxicant), and (11) (mental health) and terminating Ann's and Michael's parental rights to Gina. Michael appeals.

## III.   STANDARD OF REVIEW

Whether a child is in need of aid, whether a parent has remedied the conduct or conditions that placed the child at substantial risk of harm, and whether termination of parental rights is in the best interests of the child are factual findings

subject to clear error review.[2] "[F]actual findings are clearly erroneous if review of the entire record leaves us with 'a definite and firm conviction that a mistake has been made.' "[3]

## IV.    DISCUSSION

Under AS 47.10.088(a) parental rights may be involuntarily terminated only if

> (1) "the child has been subjected to conduct or conditions" that caused him or her to be in need of aid as described in AS 47.10.011; (2) "the parent . . . has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury"; and (3) OCS has made "reasonable efforts" toward family reunification . . . . [Alaska Statute] 47.10.088(c) further provides that in a proceeding to terminate parental rights, "the court shall consider the best interests of the child."[4]

Michael's brief lists only two issues on appeal:  whether the superior court erred in finding (1) that Gina was in need of aid and (2) that termination of his parental rights was in Gina's best interests.  He also argues that he "remedied the conduct or conditions that caused Gina to be a child in need of aid."

---

**2**    *See Trevor M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 368 P.3d 607, 609-10 (Alaska 2016)); *Joy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 382 P.3d 1154, 1162 (Alaska 2016).

**3**    *Joy B.*, 382 P.3d at 1162 (quoting *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1264 (Alaska 2014)).

**4**    *Id.* (first alteration in original).

**A.      The Superior Court Did Not Clearly Err In Finding That Gina Was A Child In Need Of Aid.**

Michael argues that the superior court erred in finding that he rendered Gina in need of aid by abandoning her through his failure to participate in a suitable case plan. Specifically, he argues that his regular visitation and his "engage[ment] with the case" show that he did not abandon his daughter, despite the fact that he "did not complete portions of his case plan." He argues that "fail[ing] to participate in a suitable plan or program designed to reunite the parent or guardian with the child" under AS 47.01.013(a)(4) "implies passive inaction . . . [and] that a refusal to participate may be excusable"; he also argues that "the substance of his participation was to disagree with OCS."

Under AS 47.10.011(1) a child may be found to be in need of aid if a parent has abandoned the child, and AS 47.10.013(a)(4) provides that "[a]bandonment of a child . . . includes instances when the parent . . . , without justifiable cause, . . . failed to participate in a suitable plan or program designed to reunite the parent . . . with the child." "While this statutory provision does not necessarily require a parent to follow his or her reunification plan to the letter, it does require more than minimal participation."[5] Michael was relatively consistent in visitation, cleaned up his home, and participated in case plan meetings, but he failed to participate in any other aspect of his case plan. He refused UAs[6] and a hair strand test and did not participate in "parental risk assessments, LEAP behavioral health evaluations (a form of anger management therapy), mental and behavioral health evaluations," a substance abuse assessment, individual mental health and substance abuse counseling, or parenting classes, which were all part

---

[5]      *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 951 (Alaska 2000).

[6]      Michael tested positive for marijuana in the one UA he submitted to, at his own request, within days of the termination trial.

of his case plan. And while Michael expresses disagreement with the case plan, he does not identify anything unsuitable about the case plan nor any justifiable cause for his failure to participate in it.

As to his unsupported argument that "failed to participate" implies passive inaction, our caselaw shows that refusal to participate in a case plan is indeed a failure to participate under AS 47.10.013(a)(4).[7] Thus, the superior court did not clearly err in finding that Michael abandoned Gina by "fail[ing] over the course of 15 months to meet any of the requirements besides consistent visitation and cleaning up his home that would have allowed OCS to return [Gina] to him."[8]

## B. The Superior Court Did Not Clearly Err In Finding That Michael Failed To Remedy The Conduct Or Conditions That Placed Gina At A Substantial Risk Of Harm.

Michael argues that he "remedied the condition of his home" and that he "has shown, through his testimony, that he has made a behavioral change . . . [and] is willing to protect Gina from Ann." Under AS 47.10.088(a)(2), to terminate parental rights, the superior court must find by clear and convincing evidence that the parent either

> (A) has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or

---

[7]     *See, e.g.*, *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949-51 (Alaska 2013) ("[T]here is no clear error in the superior court's finding that Sherman failed, without justification, to participate in his case plan by refusing to take the court-ordered psychological evaluation and refusing to disclose information about his income and housing.").

[8]     Because we affirm the child in need of aid finding based on AS 47.10.011(1), we need not address Michael's arguments regarding subsections (6), (8), (9), (10), and (11). *See Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 675 (Alaska 2008).

(B) has failed, within a reasonable time, to remedy the conduct or conditions that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury . . . .

The superior court "credit[ed] and commend[ed] [Michael] for cleaning up his home, which was one of the reasons for [Gina's] removal." However, it found that he "failed to acknowledge the legitimate reasons OCS has for requiring that he participate in the other aspects of his case plan besides visitation and cleaning up his home" and that he was "not willing to be inconvenienced by any of OCS'[s] requirements."

Furthermore, the court found that Michael failed to "take[] steps over the past 15 months to ensure that [Gina] [would] be kept safe from [Ann] and ha[d] not convinced the [c]ourt that he [would] do so in the future." The court pointed out inconsistent testimony by Michael that he recognized "[Ann] pose[d] a risk to [Gina] and that he would protect her, but . . . that he would not keep [Gina] from her mother." The court found that Michael failed to take steps to get a protective order; it noted that he said he would get a protective order upon Gina's return but found that "[h]aving [Gina] removed from his care was not enough of an incentive for [Michael] to keep [Ann] away from the home" and did "not credit [Michael's] statements that he would now protect [Gina] from [Ann] if [Gina] [were] returned to him." The court found that "the concerns regarding domestic violence [were] still present" due to Ann's continued presence in Michael's home and the failure of both parents to participate in the domestic violence counseling services offered by OCS; the court also found that Michael "fail[ed] to acknowledge his own substance abuse problems." In light of the record and the court's findings, it was not clear error for the court to conclude that Michael failed to remedy the conduct or conditions that placed Gina at a substantial risk of harm and that Gina would not be safe if returned to the home.

**C.     The Superior Court Did Not Clearly Err In Finding That Terminating Michael's Parental Rights Was In Gina's Best Interests.**

Michael finally argues that the superior court erred in finding that termination of his parental rights was in Gina's best interests. He argues that he formed a strong bond with Gina and that he has raised four other children successfully and is capable of raising Gina as well. He argues that the court's "focus[] on [his] failure to '[]acknowledge that there was a danger to [Gina] and that OCS had a basis to remove [Gina] in the first place[]' . . . was error because it placed undue emphasis on [his] exercise of his constitutional right to contest OCS's action." And he argues that "[h]is testimony shows that he understood the danger Ann posed to Gina and that he was willing to protect her."

The superior court indicated that it took into consideration the best interests factors in AS 25.24.150(c) and "the overall best interests of the child" in finding that it was in Gina's best interests to terminate Ann and Michael's parental rights. The court noted Michael's failure "to take the measures necessary to protect [Gina] from her mother," refusal to submit to random UAs, failure to take advantage of counseling and other services offered by OCS, and failure "to acknowledge that there was a danger to [Gina] and that OCS had a basis to remove [Gina] in the first place." The court also noted Gina's need for "stability, consistency, structure, boundaries, and a consistent caregiver." It found that Gina had lived much longer with her foster parents than with her biological parents and that "[r]emoving her from her current placement where she is loved, well cared for, and has stability and permanency and placing her back in a home with [Michael] where she would likely be exposed to domestic violence and substance abuse is not in [Gina's] best interests." In light of these findings, the court did not clearly err in finding that termination of Michael's parental rights to Gina was in Gina's best interests.

## V. CONCLUSION

We AFFIRM the superior court's order terminating Michael's parental rights.

*1664*