NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALVIN R., | ) | |
| | ) | Supreme Court No. S-16942 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-00261 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT[*] |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1702 – October 24, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Pamela Scott Washington, Judge pro tem.

Appearances: Brian D. Camozzi, Camozzi Legal Services, Seattle, Washington, for Appellant. Kathryn Vogel, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.      INTRODUCTION

The Office of Children's Services (OCS) took custody of a child for the second time after receiving reports that the mother was using methamphetamine and that the child was homeless and being exposed to domestic violence. The mother ultimately

---

[*]      Entered under Alaska Appellate Rule 214.

relinquished her parental rights. The father requested that the child be placed with him. The child was placed with him for a trial home visit but removed a few months later, after the father allowed the mother to have unsupervised visitation with the child in violation of the safety plan. The father then largely fell out of contact with OCS. OCS petitioned to terminate the father's parental rights. The superior court found the child was in need of aid based on abandonment, neglect, and substance abuse; that the father had failed to remedy his conduct; that OCS had made reasonable efforts to reunify the family; and that it was in the child's best interests to terminate the father's parental rights. The father appeals the child in need of aid and best interests findings. Because the superior court did not clearly err by finding the child in need of aid due to abandonment or by finding termination of parental rights was in the child's best interests, we affirm.

## II.     FACTS AND PROCEEDINGS

### A.     Initial OCS Involvement

Alvin R. and Amelia C. are the parents of one child, Bernard, who was born in March 2008.[1] Bernard was previously in OCS custody from 2009 through 2011 because of Amelia's methamphetamine use.

In December 2014 OCS received reports that Amelia was using methamphetamine and that there had been domestic violence between Alvin and Amelia. OCS investigated and concluded that Amelia was using methamphetamine. The investigator was concerned that Bernard was homeless, not getting enough food, and being exposed to methamphetamine use. During this period Alvin was not living with Amelia or Bernard.

---

[1]     We use pseudonyms to protect the parties' privacy.

OCS held a team decision meeting on April 15, 2015 and took emergency custody of Bernard and his two siblings.[2] OCS did not place Bernard with Alvin because Alvin had admitted to using methamphetamine in December 2014 and because of the reports of domestic violence between him and Amelia. OCS filed an emergency petition for temporary custody and adjudication of all three children in need of aid under AS 47.10.011 (7) (sexual abuse or substantial risk of sexual abuse), (8)(B)(ii) (exposure to violence between two household members), (9) (neglect), and (10) (substance abuse). In May the superior court found probable cause that the children were in need of aid.

Bernard was initially placed in an emergency foster home while OCS worked to assess whether Alvin could provide a safe home. The caseworker set up urinalysis testing for Alvin, did a home visit, and referred him to the Father's Journey parenting program through Cook Inlet Tribal Council (CITC). Alvin completed 5 of the scheduled 20 urinalysis tests; none were positive for methamphetamine.

## B. The Trial Home Visit

OCS placed Bernard with Alvin for a trial home visit in June 2015. The caseworker instructed Alvin not to allow Amelia into his home to protect Bernard from further exposure to domestic violence. About two weeks later Amelia came to Alvin's home and took Bernard. Alvin called the police. After this incident, the caseworker suggested that Alvin get a restraining order against Amelia.

Alvin began attending Father's Journey classes in June 2015 and attended several classes from June to August. But he never completed the course, and CITC closed his case in September. In early September the program staff tried to contact Alvin

---

[2]     The underlying OCS case involved Amelia's other two children, who have different fathers. Amelia relinquished her parental rights to all three children during the termination trial. Only the termination of Alvin's parental rights to Bernard is on appeal in this case.

to explain that he could not miss any more sessions if he wanted to complete the class that month but were unable to reach him or leave a message.

In September 2015 an Anchorage Police Department officer was dispatched to Alvin's residence after one of his older children reported being assaulted by Amelia. The officer spoke with Alvin on the phone; Alvin reported that Amelia was staying in his home because she was homeless. Alvin told the caseworker that Amelia was staying with him so she would have a safe place to come down from drugs. The next month OCS received a report that Amelia had been seen driving with Bernard. When the caseworker asked Alvin about the report, Alvin explained that he let Amelia borrow the car while they were doing laundry. As a result of this contact, OCS terminated the home visit.

### C.    Alvin's Case Plan

In late October 2015 OCS filed its predisposition report. OCS asked the court for custody of Bernard, arguing that he had been neglected for most of his life, that Amelia had not taken any steps to remedy her conduct, and that Alvin continued to be involved with Amelia and did not understand that she presented a safety risk to Bernard.

OCS then created a case plan for the family. Alvin's goals were to have no contact with Amelia and not to engage in any illegal activity or use any illegal substances. To achieve those goals, OCS directed Alvin to seek a restraining order against Amelia, avoid contact with her, participate in the Father's Journey program, and obtain a psychological assessment. OCS also required Alvin to submit to random drug screening, complete a substance abuse assessment if he missed any further drug tests, remain sober at all times, and avoid individuals who were not sober.

After a January 2016 disposition hearing, the superior court found that Bernard and his two siblings were in need of aid and committed them to OCS's custody for two years. A new caseworker was assigned to work with the family from February

until the end of April. She was unable to reach Alvin during that time. Bernard's foster mother reported to the caseworker that Alvin was visiting Bernard fairly often, but not consistently. Bernard told the caseworker that he wanted to return home with Alvin.

Alvin scheduled visits but sometimes a month or more would go by without contact. As a result of this inconsistency, the foster mother eventually asked OCS to coordinate visits. It is unclear at what point the foster mother made this request. Because OCS could not contact Alvin, his visits with Bernard stopped.

A third caseworker was assigned in April 2016, and OCS created a new case plan. Alvin's goals were to: (1) prevent Bernard from having contact with unsafe people, including Amelia, and to understand how domestic violence and substance abuse affect Bernard; (2) maintain a clean and sober lifestyle; and (3) maintain contact with OCS. OCS again directed Alvin to refrain from contacting Amelia, participate in the Father's Journey program, obtain a psychological assessment, submit to random drug testing, submit to a substance abuse assessment if he missed any additional drug tests, remain sober, and meet with OCS monthly.

Despite searching for Alvin in April and again in August, the caseworker was unable to get in touch with him between April and September 2016. OCS amended its petition for termination of parental rights in August, asserting that Alvin had made no progress on his case plan since the trial home visit ended in October 2015. OCS also asked the court for permission to provide notice to Alvin by publication because he was an absent parent; the superior court granted the motion in late August.[3]

Alvin met with the third caseworker for the first time in September 2016. Alvin reported that he was no longer in contact with Amelia and that he had completed

---

[3] It does not appear that notice was actually published because Alvin was personally served on August 15.

the Father's Journey class in 2015. Alvin agreed to take several of the steps outlined in his case plan. But he did not follow the case plan nor did he contact OCS again until May 2017.

OCS updated the case plan in February 2017. Alvin's goals were to have a strong bond with Bernard, to understand how violence and criminal behavior affect his ability to parent, and to be clean and sober. The first step required Alvin to "engage in case planning with [OCS]." Alvin was also expected to "maintain appropriate boundaries with unsafe people," participate in Father's Journey, engage in consistent family contact, participate in random drug testing, receive an integrated substance abuse and mental health assessment, and complete parenting classes.

When Alvin met with his caseworker in late May 2017 he reported that his relationship with Amelia had ended. Alvin took a drug test; it was positive for methamphetamine, and he admitted to using methamphetamine the previous day. The caseworker set up urinalysis testing for Alvin. Between May and late July Alvin failed to show up for 22 urinalysis appointments, tested positive for methamphetamine 3 times, and tested positive for marijuana 8 times.

In June 2017, after a team decision meeting that Amelia and Alvin together attended, OCS decided to move Bernard to a therapeutic foster home because of his aggressive and sexualized behavior. A few days later Amelia and Alvin met with the caseworker together. They reported that they were looking for housing. It is unclear from the record whether they were seeking to move in together or seeking separate housing due to the on-again, off-again nature of their relationship. The caseworker scheduled a meeting with Alvin in July, but he did not attend; OCS had no further contact with him before the August termination trial.

Alvin and Bernard had telephone contact while Bernard was with the first foster parent, but it is unclear from the record how frequently this phone contact occurred or if it continued after he moved to the therapeutic foster home in early August 2017.

Shortly before the termination trial, a family member approached OCS about having Bernard placed with her. OCS was evaluating the viability of the placement at the time of the termination trial.

### D. Termination Trial

The superior court held a termination trial over three days in August 2017. Alvin did not attend the termination trial and his attorney informed the court that she did not know if Alvin intended to contest the termination or to relinquish his parental rights.

The three caseworkers who had been assigned to work with Amelia and Alvin over the course of the case testified. The caseworker at the time of the termination trial testified that Bernard had never said he wanted to return to his parents' home.

One of the caseworkers testified about his understanding of Alvin and Amelia's relationship: Amelia informed him that they were not in contact in late 2016, they were living together in January 2017, they broke up again in March, but they were back together by June.

The superior court made oral findings at the end of the trial. It found by clear and convincing evidence that Bernard was a child in need of aid on the grounds of abandonment, neglect, and substance abuse;[4] that Alvin had not remedied the conduct or conditions that caused Bernard to be in need of aid; that OCS had made reasonable efforts to reunify the family; and it found by a preponderance of the evidence that it was in Bernard's best interests to terminate Alvin's parental rights. The superior court issued a written order reiterating its decision.

---

[4]    *See* AS 47.10.011(1) (abandonment), (9) (neglect), (10) (substance abuse).

Alvin appeals the superior court's findings that Bernard was a child in need of aid and that it was in Bernard's best interests to terminate Alvin's parental rights.

## III. STANDARD OF REVIEW

"We review the factual findings underlying the superior court's termination decision for clear error, reversing only if our review of the record leaves us with the definite and firm conviction that the superior court has made a mistake."[5] Whether a child is in need of aid is a factual determination.[6] "Best-interests determinations are factual findings that are reviewed under a clearly erroneous standard."[7] "Whether the superior court's findings are consistent with the CINA statutes is a question of law that we review de novo, adopting 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err By Finding That Bernard Was A Child In Need Of Aid On The Basis Of Abandonment.

"In order to terminate a parent's rights and responsibilities, a superior court must find by clear and convincing evidence that the child has been subjected to conditions or conduct that would qualify the child as a child in need of aid pursuant to

---

[5]  *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207-08 (Alaska 2000).

[6]  *Trevor M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 368 P.3d 607, 609-10 (Alaska 2016).

[7]  *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012).

[8]  *Id.* (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

AS 47.10.011."[9] The superior court found that there was clear and convincing evidence that Bernard was a child in need of aid under AS 47.10.011(1) (abandonment), (9) (neglect), and (10) (substance abuse). The court did not clearly err by finding there was clear and convincing evidence that Alvin had failed to work on his case plan for over a year and thus had abandoned Bernard. "Because only one statutory basis is required" to establish that a child is in need of aid, we do not reach the other grounds.[10]

Alaska Statute 47.10.013(a) "provides a non-comprehensive list of behaviors that may constitute abandonment"[11] if done "without justifiable cause."[12] We have explained that "the various ways abandonment can be shown under AS 47.10.013(a) are listed disjunctively, and a single adequately supported finding is therefore enough to establish that [the child] was a child in need of aid."[13] One of those behaviors is that the parent "failed to participate in a suitable plan or program designed to reunite the parent . . . with the child."[14] The superior court found that Alvin had "failed to participate in a case plan designed to reunite him and his son." This finding

---

[9] *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1254 (Alaska 2010).

[10] *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 762 (Alaska 2009). We note that the superior court provided only minimal support for its findings that Bernard was a child in need of aid. We take this opportunity to remind the superior court that it must make sufficiently detailed findings to support its legal conclusions and to allow for meaningful appellate review.

[11] *Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 210 (Alaska 2010).

[12] AS 47.10.013(a).

[13] *Trevor M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 368 P.3d 607, 610 (Alaska 2016).

[14] AS 47.10.013(a)(4).

is not clearly erroneous and is sufficient to support a finding that Bernard was a child in need of aid.[15]

Although AS 47.10.013(a)(4) "does not necessarily require a parent to follow his or her reunification plan to the letter, it does require more than minimal participation."[16] We have held that a parent's failure to participate in a case plan for six months can constitute abandonment.[17] Between the end of the trial home visit in October 2015 and May 2017, the only arguable progress that Alvin made on his case plan was his self-reported lack of contact with Amelia and his family contact with Bernard. In *Dale H. v. State, Department of Health & Social Services, Office of Children's Services* we affirmed the superior court's finding that the father had not participated in his case plan when the father had stopped participating in urinalysis testing after one result, had failed to contact OCS for six months, and had not completed a domestic violence intervention program.[18] Alvin demonstrated a similar lack of participation in his case plan: he

---

[15] The superior court also found that Alvin made no efforts to support and communicate with Bernard and failed for a period of over six months to maintain regular visitation. But the record demonstrates that Alvin visited Bernard and may have had phone communication with him, and it at most establishes that there were periods of a month without visitation. The court's findings about visitation and communication are clearly erroneous.

[16] *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 951 (Alaska 2000); *see Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 950 (Alaska 2013).

[17] *A.B.*, 7 P.3d at 951; *see Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 211 (Alaska 2010) (affirming a finding of abandonment when father failed to "even minimally participate[ ] in large portions of his case plan for over a year").

[18] 235 P.3d at 210-11; *see also Sherman B.*, 310 P.3d at 948, 950-51 (affirming a finding of abandonment when father largely maintained regular visitation

(continued...)

completed a few urinalysis tests, attended some of the Father's Journey classes,[19] had some, albeit inconsistent, visitation with Bernard, and was out of contact with OCS from February to September 2016 and again from September 2016 to May 2017. To contact Alvin, OCS called the numbers on file for him, searched for known relatives, left messages with the foster parent to pass on, searched his last known address in April and August 2016, and filed a motion for permission to publish notice of the termination proceeding to Alvin as an absent parent.

The superior court did not clearly err by finding that Alvin's failure to participate in the case plan constituted abandonment.

## B. The Superior Court's Best Interests Determination Was Not Clearly Erroneous.

The superior court found that it was in Bernard's best interests to terminate Alvin's parental rights. In its oral findings the court emphasized that this was the second time Bernard had been in OCS custody, that he had experienced much instability, and that he was demonstrating a need for more services. The court concluded that, because Alvin had not begun substance abuse treatment, there was no possibility that he would be able to have custody of Bernard within a reasonable time period. Alvin appeals the best interests finding, arguing that he and Bernard are bonded, they have been in contact,

---

[18]     (...continued)
but failed to comply with several important aspects of case plan).

[19]     Alvin argues that he believed he had completed Father's Journey and that OCS's failure to inform him he had not actually completed the program prevented him from resuming the course. OCS apparently received the paperwork indicating that Alvin did not complete Father's Journey in December 2016, and there is no indication in the record that OCS ever informed him it had received the paperwork. Regardless, the last Father's Journey class that Alvin attended was in August 2015, before the end of the trial home visit, and the record does not demonstrate that he made any progress on his case plan during the October 2015 to May 2017 period.

that Alvin is capable of caring for Bernard's basic needs, and that there is no evidence that the potential new placement would be appropriate.

Alaska Statute 47.10.088(b) lists best interests factors that the court may consider:

> (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.[20]

These factors are neither mandatory nor exclusive.[21] The "superior court may consider any fact relating to the best interests of the child in its best-interests analysis."[22]

The superior court can consider the bond between a parent and a child and can "consider the fact that there are no favorable permanent placement options for a child . . . as a factor in determining whether terminating a parent's rights would be in a child's best interests."[23] But neither factor is in the statute[24] and the court is not required to give these factors determinative weight.

> We have repeatedly recognized that the best-interests analysis may include the child's need for permanency at the time of

---

[20]     AS 47.10.088(b).

[21]     *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263 (Alaska 2010); *see Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 967 (Alaska 2013).

[22]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 932 (Alaska 2012).

[23]     *Karrie B. ex rel. Reep v. Catherine J.*, 181 P.3d 177, 185-87 (Alaska 2008).

[24]     *See* AS 47.10.088(b).

the termination trial . . . "a child's need for permanence and stability should not be put on hold indefinitely while the child's parents seek to rectify the circumstances that cause their children to be in need of aid."[25]

"[I]n a termination trial, the best interests of the child, not those of the parents, are paramount."[26] In *Casey K. v. State, Department of Health & Social Services, Office of Children's Services* we affirmed a best interests finding because, "[n]otwithstanding the evidence of [the mother's] bond with [the child], it was appropriate for the superior court to emphasize [the child's] need for permanency and stability in determining whether termination was in her best interests."[27] It was also appropriate for the court to do so in this case. Even though the court was not yet certain if a viable permanent placement for Bernard was available, its decision to focus on his need for stability and the evidence that Alvin would not be able to provide that stability for a significant amount of time was not clearly erroneous.[28]

## V. CONCLUSION

The superior court is AFFIRMED.

---

[25]     *Hannah B.*, 289 P.3d at 933 (quoting *Kent V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 233 P.3d 597, 603 (Alaska 2010)).

[26]     *M.W. v. State, Dep't of Health & Soc. Servs.*, 20 P.3d 1141, 1147 (Alaska 2001) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 954 (Alaska 2000)).

[27]     311 P.3d 637, 648 (Alaska 2013) (footnote omitted).

[28]     Alvin also argues that he ended his relationship with Amelia and therefore addressed OCS's concerns. But the court did not discuss Alvin's relationship with Amelia in its best interests finding; it relied on the facts that Alvin had not engaged in any substance abuse treatment and that he would not be able to take custody of Bernard within a reasonable time.