*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MATTHEW H., | ) | |
| | ) | Supreme Court No. S-16383 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-13-00042 CN |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | No. 7177 – June 2, 2017 |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

The superior court terminated a father's parental rights to his daughter. He appeals the superior court's finding that he failed to remedy the conduct and conditions that placed his child in need of aid, arguing that he cleaned up the family home, obtained

a commercial driver's license and a job, and passed drug tests during the pendency of the case. He also argues that the superior court deprived him of his right to self-representation when it denied his motion to allow his appointed counsel to withdraw shortly before the termination trial.

We conclude that the superior court did not clearly err in finding that the father did not remedy the mental health issues that were "the root cause" of his inability to safely parent his daughter. We also conclude that it was not an abuse of discretion to deny the father's motion to allow his attorney to withdraw. We therefore affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

Matthew H. is the father of Henrietta H. and the stepfather of Greta W.[1] Before the Office of Children's Services (OCS) became involved in their lives, Matthew, Henrietta, Greta, and the children's mother, Miriam S., lived together in a one-room cabin. The cabin lacked electricity, plumbing, and a water source and, according to Henrietta and Greta, was not always heated in the winter. Rabbits, chickens, dogs, and a cat shared the family's living quarters. The cabin and its yard and driveway were littered with garbage, including old appliances and nonfunctional vehicles.

OCS removed 7-year-old Henrietta and 13-year-old Greta from the home in May 2013 following a report that they were being exposed to the manufacture and use of methamphetamine. The two girls were "severely underweight"; they reported not having enough food at home and occasionally having to forage for food at waste transfer sites, and they tended to hoard food after their removal.

---

[1] Pseudonyms are used for all family members to protect their privacy.

Neither child was enrolled in school. Matthew and Miriam testified that it was too hard to get the children to a bus stop, although the local school district had offered a stipend to help them pay for gas. The parents claimed to have home-schooled the girls, but both were "extremely far behind academically."

Except for a single emergency room visit, neither child had visited a doctor or dentist in the six years the family had lived in Alaska. Henrietta had not received any shots since she was an infant. Both girls had scars from untreated burns from the stove, and Henrietta had a large untreated burn on her foot from stepping in a pot of boiling water. Henrietta had significant tooth decay, requiring the extraction of nine teeth within three months of her removal from the home. She also had an untreated scratch on her cornea; after removal she was prescribed glasses with the hope of avoiding a permanent loss of vision. Both girls also "had untreated counseling and mental health needs," and a psychotherapist found them to be "extremely traumatized."

Both Henrietta and Greta also tested positive for methamphetamine and exhibited withdrawal symptoms. They reported that Matthew and Miriam manufactured and used methamphetamine, and they "were able to describe how methamphetamine is made and used."

Henrietta reported witnessing domestic violence between Matthew and Miriam and between Matthew and Greta; Matthew admitted to domestic violence between himself and Miriam. After her removal from the home Henrietta worried that Matthew might hurt Miriam since she was no longer there "to protect" her mother.

With the girls in its custody, OCS struggled to develop a relationship with Matthew, who was "suspicious" and "hostile." A psychotherapist diagnosed him with an anxiety disorder, possible psychotic disorder, and antisocial personality disorder with paranoid and narcissistic traits. He was also diagnosed with methamphetamine abuse and marijuana dependence, though he only admits to marijuana use, and his drug tests

during OCS's involvement were negative for methamphetamine. Matthew did not engage in substance abuse treatment or counseling for mental health and domestic violence while this case was pending, despite recommendations that he do so.

Because of concerns about Matthew's unmanaged mental health, OCS did not arrange visitation between him and Henrietta. The superior court, following a contested visitation hearing, agreed that visitation was not in Henrietta's best interests. Matthew did write letters to Henrietta, but she declined to reply. And she became upset and frightened when she encountered Matthew unexpectedly after a visit with Miriam.

In September 2015, shortly before the termination trial, Henrietta and Greta were placed with Matthew's sister in another state.

B.    Proceedings

OCS's petition to terminate Matthew's and Miriam's parental rights was filed in May 2014. The superior court granted several continuances of the termination trial, which was finally scheduled to begin on September 22, 2015.

On August 4, 2015, Matthew filed a motion asking that his public defender be allowed to withdraw, explaining that he intended to represent himself going forward. A judge who was temporarily handling the case granted the motion on August 26, but when the assigned judge, Superior Court Judge Michael A. MacDonald, learned of it on September 8 he vacated the order granting the motion to withdraw and set a hearing to discuss the parents' representation. Midway through the subsequent hearing Judge MacDonald referred the matter to another judge for an ex parte inquiry into Matthew's and his attorney's reasons for filing the motion to withdraw. The other judge conducted the ex parte hearing and recommended that the motion for withdrawal be denied. Judge MacDonald accepted this recommendation, reasoning that the children's interests required that the case go forward "in the most urgent way" and that no last-minute substitute, whether "an experienced attorney or a pro se litigant, could adequately be

prepared to represent the parents' interests when the stakes are so high and a fundamental right is involved."

The termination trial began as scheduled on September 22, 2015. At the start of trial the court asked Matthew again whether he wanted to represent himself. Matthew initially said that "[i]t wasn't [his] wish to go into this without an attorney, [he] just didn't feel that [he] was being represented properly." Shortly thereafter, however, he said he would like his public defender to remain on the case.

The trial took place over 11 days and concluded in January 2016. In a written order issued in June the superior court found that Henrietta and Greta were children in need of aid under a number of subsections of AS 47.10.011: (4) (failure to provide necessary medical care), (6) (substantial physical harm or risk of harm to the children), (8) (domestic violence), (9) (neglect), (10) (parental substance abuse), and (11) (parental mental illness). The court found that Matthew and Miriam had failed to remedy the conduct that caused their children to be children in need of aid, that OCS had made reasonable but unsuccessful efforts to reunify the family, and that termination was in the children's best interests. The court accordingly terminated Matthew's and Miriam's parental rights to Henrietta and Miriam's parental rights to Greta. Matthew appeals.

## III.  STANDARDS OF REVIEW

Whether a parent has remedied the conduct or conditions that placed the child in need of aid is a factual determination "best made by a trial court after hearing testimony and reviewing evidence."[2] When reviewing findings of fact, "[w]e will find clear error only when a review of the entire record leaves us 'with a definite and firm

---

[2]     *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011) (citing *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

conviction that the superior court has made a mistake.' "[3]  We  review the superior court's denial of an attorney's motion to withdraw for abuse of discretion.[4]

## IV.    DISCUSSION

Matthew raises two challenges on appeal.  First, he argues that the superior court clearly erred in finding that he failed to remedy the conduct and conditions that made Henrietta a child in need of aid.  Second, he argues that the superior court deprived him of his right to self-representation when it denied his motion to allow his attorney to withdraw.

### A.    The Superior Court Did Not Clearly Err In Finding That Matthew Failed To Remedy The Conduct Or Conditions That Made Henrietta A Child In Need Of Aid.

Alaska Statute 47.10.088(a)(2) provides that parental rights may be terminated if the court finds by clear and convincing evidence that the parent "has failed . . . to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."  A parent's failure to remedy any one of the conditions that placed the child in need of aid leaves the child at risk of harm and therefore supports termination.[5]

---

[3]    *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 774 (Alaska 2012) (citing *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122 (Alaska 2002)).

[4]    *Devincenzi v. Wright*, 882 P.2d 1263, 1265-66 (Alaska 1994).

[5]    *See Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 762 (Alaska 2009)  ("[O]nly one statutory basis is required for a CINA finding." (citing *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 67 P.3d 648, 651 (Alaska 2003))).

Matthew argues that the court's failure-to-remedy finding "is error because it overlooks the fact that one of the most substantial issues in this case was the condition of the family's cabin," which "he had made great efforts to remedy" by cleaning up the property. He adds that he also "obtained his commercial driver[']s license and gainful employment" and "had not tested positive for methamphetamine for the duration of the case." But the court found Henrietta to be a child in need of aid for a number of reasons; further, it found that "the root cause of the harm the children have suffered" was parental "mental illness and mental deficiencies." None of the personal improvements that Matthew advances in his brief directly addressed his mental health, and the evidence supports the superior court's finding that this "root cause" of the children's harm remained unremedied.

Matthew received behavioral and mental health evaluations from Lisa Hay, a psychotherapist, licensed social worker, and director of a domestic violence treatment program, and from Dr. Marti Cranor, a licensed psychologist. Both Hay and Dr. Cranor agreed that Matthew had a personality disorder involving antisocial and paranoid traits, along with a "marijuana use disorder," anxiety disorder, and possible psychotic disorder.

The two providers were particularly concerned about Matthew's lack of self-awareness, "lack of empathy for those he has hurt, . . . lack of remorse, . . . lack of insight[,] and . . . lack of desire to make changes in his lifestyle and behaviors." Hay worried that Matthew's "high level of denial," his inability "to recognize the effect the situation in the home had on the children," and his lack of remorse were "indicative of a very dangerous individual who is very likely to repeat his violence and should not have anyone vulnerable to him in his custody." Dr. Cranor concluded that Matthew "was at [a] very high risk for neglecting his children" and that he was in the "at-risk range" for engaging in child abuse.

Hay noted that Matthew's mental health issues were probably severe enough that he was "unable to handle these issues himself."  She and Dr. Cranor recommended that Matthew receive individual therapy, but they were concerned that "the severity of [his] personality disorder(s)" would negatively affect his capacity for "making positive changes."  Dr. Cranor referred Matthew to a particular counselor with expertise in working with people like him, and the counselor agreed to take Matthew on as a client; but Matthew refused to sign a release of information or follow through with therapy sessions.

This record amply supports a finding that Matthew has significant mental health issues that negatively affect both his own functioning and his ability to parent. The record supports the court's further finding that Matthew resists taking steps to improve his mental health and that, in the view of the mental health professionals, he is unlikely to "respond positively to any form of psychological intervention." We therefore affirm the superior court's finding that Matthew failed to remedy the "mental illnesses and deficiencies" that placed Henrietta "at substantial risk of continued physical harm and continuing mental injury."  Matthew's failure to remedy this condition is, by itself, sufficient to support the court's failure-to-remedy finding.[6]

### B. The Superior Court Did Not Abuse Its Discretion By Denying Matthew's Motion To Allow His Attorney To Withdraw.

Matthew next contends that "[t]he trial court erred when it denied [his] request to represent himself."  He notes that Alaska CINA Rule 12(c) permits a parent to waive the right to counsel,[7] and he argues that the court erred when it failed to respect

---

[6]     *See id.*

[7]     CINA Rule 12(c) ("The court shall accept a valid waiver of the right to counsel by any party if the court determines that the party understands the benefits of
(continued...)

his waiver of that right.[8] But allowing Matthew to assume the task of self-representation close to trial would have delayed the trial to the detriment of the children's best interests.

Matthew filed his motion for withdrawal of counsel on August 4, 2015, seven weeks before the start of trial. The motion was granted later that month by a judge handling the case temporarily, but the case's assigned judge, Judge MacDonald, did not learn of the motion or the order allowing withdrawal until the September 8 pretrial hearing. At that hearing the public defender who had been representing Matthew informed the court that he had not yet "been able to transfer any of the [discovery] to [Matthew]," noting that there were both videos and "many thousands of pages worth of discovery," some of which was confidential, that he needed to sort through before the transfer could be completed. He believed that given the quantity of discovery and the fact that Matthew did not yet have it, Matthew "need[ed] time to prepare." On the basis of these representations Judge MacDonald vacated the order granting the public defender's withdrawal and scheduled a hearing on the motion.

At the hearing two days later, Judge MacDonald advised the parties that he would ask another judge to inquire ex parte into Matthew's reasons for seeking his counsel's withdrawal. Superior Court Judge Michael McConahy took on the task and, after hearing from the parties and their lawyers, recommended against allowing

---

[7](...continued)
counsel and knowingly waives those benefits.").

[8]     Matthew also asserts that he has a constitutional right to self-representation. We have never squarely decided whether the right to self-representation that exists in the criminal context extends to child in need of aid proceedings. *See Donna A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-11391, 2005 WL 564143, at *3 n.4 (Alaska Mar. 9, 2005). We need not reach the issue in this case, because even where such a right exists a trial judge may deny a request for self-representation when it would delay trial and the litigant has shown a lack of diligence in asserting the right. *See Brewer v. State*, 55 P.3d 749, 753 (Alaska App. 2002).

withdrawal. Judge MacDonald accordingly denied Matthew's motion, stating that his request for self-representation "will be denied because it's too late an hour to find that any person, an experienced attorney or a pro se litigant, could adequately be prepared to represent the parents' interests when the stakes are so high and a fundamental right is involved."

Trial began 12 days later. At the start of trial OCS's counsel asked the superior court to confirm whether Matthew still wished to represent himself. Matthew initially explained, "It wasn't my wish to go into this without an attorney, I just didn't feel that I was being represented properly." Moments later he said he "would like [his appointed counsel] to remain in the case."

OCS argues that Matthew thus waived his argument for self-representation on the day of trial. But we cannot view Matthew's consent at trial as an effective waiver. He had appeared with his counsel with the understanding that he would be represented; trial was actually beginning; the superior court had made clear that it would not grant any more continuances; and Matthew had had no opportunity to prepare to represent himself. He could reasonably conclude that at that point he had no realistic choice but to proceed with his public defender.

Nevertheless, we conclude that the superior court did not abuse its discretion when it found that Matthew's request for self-representation came too late. OCS had filed its petition for termination in May 2014, 15 months before trial. Matthew sought his counsel's withdrawal with seven weeks remaining. While that may be ample time for a pro se litigant to prepare for trial in some cases, Matthew's counsel informed the court that in this case it was not enough. The case had a "long history and complicated facts." At the time of the September 8 status hearing Matthew's public defender, though working on the assumption that he was withdrawing, was still in the beginning stages of gathering and reviewing the voluminous discovery so that he could

transfer it to Matthew. By that point only two weeks remained before the multi-day trial was scheduled to go forward, and the public defender believed that Matthew needed more time to prepare. The superior court agreed, finding that "even experienced counsel could not adequately be prepared to go in this case . . . in such a short period of time." The superior court thus reasonably concluded that allowing Matthew to represent himself would delay the trial.

The superior court also appropriately considered that the interests of the children counseled against delay. The court noted that the termination trial had been continued a number of times already, and by the time of Matthew's motion "the case need[ed] to go forward . . . in the most urgent way"; "there [was] no time for the sake of the[] children's permanency to delay." We have repeatedly emphasized that the permanency needs of children weigh heavily against delaying termination proceedings,[9] as "stability and permanency [are] crucial to . . . children's health."[10] There were thus compelling "reasons to have [the] case tried promptly and on the trial date which had already been set."[11] We conclude that the superior court did not abuse its discretion when it denied Matthew's motion to allow withdrawal and required him to go to trial represented by his appointed counsel.

---

[9] *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 910, 913-15 (Alaska 2015) ("The best interests of children, including the interest in permanency as opposed to leaving children in limbo, are paramount.").

[10] *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 848 (Alaska 2009); *see also Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263-64 (Alaska 2010).

[11] *Huitt v. State*, 678 P.2d 415, 421 (Alaska App. 1984).

## V.    CONCLUSION

We AFFIRM the superior court's order terminating Matthew's parental rights.