NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| VIOLET W., | ) |
| | ) Supreme Court No. S-17952 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-18-00366 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT[*] |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1842 – August 18, 2021 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter R. Ramgren, Judge.

Appearances: Jason A. Weiner, Jason Weiner & Associates, P.C., Fairbanks, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Laura Hartz, Assistant Public Advocate, and James Stinson, Public Advocate, for Guardian Ad Litem.

Before: Winfree, Maassen, Carney, and Borghesan Justices. [Bolger, Chief Justice, not participating.]

## I. INTRODUCTION

A mother challenges the trial court's decision terminating her parental rights to her daughter. The mother primarily asserts that the trial court abused its

---

[*]    Entered under Alaska Appellate Rule 214.

discretion by denying a mid-trial motion to continue the termination trial, but she also asserts that the trial court erred in one of its termination findings. We conclude that the trial court did not abuse its discretion by denying the continuance or err in its termination findings, and we affirm the parental rights termination.

## II.  BACKGROUND

### A.  Relevant Facts

Violet W.[1] was 16 when she gave birth to Elise in 2014. Elise spent most of her early life in her maternal grandparents' care. The grandparents have a history of neglecting their biological children, and numerous child protective services reports for Elise exist in different states for neglect and concerns of drug use and domestic violence. Violet has a history of substance abuse, including methamphetamine and marijuana; domestic violence; and criminal charges and incarceration.

The Office of Children's Services (OCS) became actively involved with the family in 2017. Given the nature of this appeal we do not need to detail the history of OCS's involvement with the family, but while Violet was incarcerated in July 2018 OCS removed Elise from her grandparents' home and placed her in foster care. In August Elise tested positive for methamphetamine, amphetamine, and marijuana, and a few weeks later she was diagnosed with an adjustment disorder and referred to counseling. The court granted OCS temporary custody of Elise in September.

Violet initially engaged with OCS and participated in a trial home visit with Elise from April to July, 2019. Violet relapsed and the trial home visit failed; Elise again tested positive for methamphetamine. Violet's subsequent engagement with OCS decreased significantly. In October the court held a status hearing; Violet was present, and a petition terminating her parental rights was discussed. Later that day police

---

[1]     Pseudonyms are used for family members.

responded to a report that Violet had made possible suicidal comments, and she was arrested for misconduct involving a controlled substance.

OCS set up a new case plan, but Violet's engagement was inconsistent; she made no progress between November 2019 and April 2020. And Violet, who moved to Georgia in February, was inconsistent in her statements about seeking treatment for substance abuse. Elise's foster mother later testified that Violet had said she was moving to Georgia to get substance abuse treatment but that she also said she would get treatment when she returned to Alaska. Violet also told OCS both that she was getting treatment in Georgia and that she would get treatment when she returned to Alaska, but she never provided OCS a release of information or a treatment facility's name.

## B. Termination Proceedings

In December 2019 OCS changed its recommendation from reunification to adoption and petitioned to terminate Violet's parental rights.[2] OCS indicated that Violet had not made substantial progress on her case plan and that Elise needed permanency. Relevant to this appeal, it identified Elise as a child in need of aid under AS 47.10.011(6) (physical abuse); AS 47.10.011(8) (mental injury); AS 47.10.011(9) (neglect); and AS 47.10.011(10) (parental substance abuse). Violet attended a permanency hearing the same day the petition was filed.

In March 2020 Violet telephonically attended a status hearing; during the hearing the court issued a pretrial order, setting a termination trial date of July 29. In May the court issued Violet a termination trial summons, specifying the July 29 trial date. On July 8 the court issued a second summons. On July 9 the court held another status hearing; Violet did not attend this hearing, but her mother did.

---

[2]    *See* AS 47.10.088(d)-(e) (requiring that OCS petition for termination of parental rights when "child has been in foster care for at least 15 of the most recent 22 months").

On July 17 OCS requested a continuance of the termination trial because it had been unable to locate Violet to serve her notice, and it later requested authorization to serve Violet by publication. On July 30 the court held a trial-setting conference, rescheduling trial for November 10. Violet's mother appeared telephonically, but Violet did not attend. On August 4 the court issued an order allowing service on Violet by publication, and the summons was published on August 20. At an October 27 hearing Violet's mother indicated she had an updated phone number for Violet.

The termination trial was held on November 10, 2020.[3] Violet's mother

---

[3] Under relevant Alaska Child in Need of Aid (CINA) statutes and rules, parental rights may be terminated at trial only if OCS shows:

> (1) by clear and convincing evidence that
>
> > (A) the child has been subjected to conduct or conditions described in AS 47.10.011 and
> >
> > > (I) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
> > >
> > > (ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; [and]
> >
> > . . . .
>
> (2) by clear and convincing evidence that
>
> > (A) the Department has complied with the provisions of AS 47.10.086 concerning reasonable efforts; [and]
> >
> > . . . .

(continued...)

and Violet's attorney were present for the entire trial, but Violet was not. After the close of evidence, but before closing arguments, Violet appeared telephonically. Violet's counsel requested a continuance because Violet wanted to contest the termination and explained that would "require, at the very least, me meeting with her . . . to review the exhibits with her and prepare her to testify if she so wishes and to consult with her about whether there are any witnesses she wants me to call." Violet's counsel told the court that counsel "was not aware of [Violet's] specific whereabouts or contact information" until that moment and that Violet "was not aware of these proceedings."

OCS and the guardian ad litem (GAL) objected to the continuance, and OCS argued that it was "disingenuous to say that [Violet] was unaware of these proceedings." They further argued a lack of good cause to continue because Violet had not engaged with OCS or Elise since July 2019 and because additional delay would impact Elise. OCS pointed out that Violet had been engaged in the proceedings early on, but she had not been actively engaged with OCS for the 16 months before the termination trial. An OCS caseworker had testified that Elise "need[ed] permanency and . . . consistency" and that terminating Violet's parental rights was in Elise's best interests. OCS and the GAL agreed that it was in Elise's best interests to have permanency and stability after nearly two years of uncertainty. Violet countered that Elise was in a stable situation and any impact would be minimal. The court acknowledged a delay would not likely impact Elise, but it pointed out that she already had been in OCS custody for more than two years and that a further delay in permanence was not in her best interests.

<hr />

[3]       (...continued)
(3) by a preponderance of the evidence that termination of parental rights is in the best interests of the child. . . .

CINA Rule 18(c); *see also* AS 47.10.088 (establishing requirements for termination).

The court denied Violet's motion to continue, noting "no excuse or any explanation [was] provided . . . why it is she was not here for today's hearing and chose not to participate" in addition to the "overwhelming testimony provided by [OCS] of all of the efforts that have been made" over the course of the case. The court further found that Violet "failed to successfully complete[] a treatment plan or demonstrate[] that she is able to maintain sobriety outside of a controlled environment. She . . . failed to otherwise demonstrate[] behavior change or the ability to maintain sobriety within a reasonable amount of time." The superior court terminated Violet's parental rights to Elise. Violet appeals the continuance decision and the finding that OCS had established her failure to remedy within a reasonable time.

## III. DISCUSSION

### A. Continuance Denial

OCS is generally required to petition for termination of parental rights if a "child has been in foster care for at least 15 of the most recent 22 months."[4] A termination trial must be held "[n]o later than six months after the date on which the petition to terminate parental rights is filed" unless good cause is shown for a continuance, taking into consideration "the age of the child and the potential adverse effect that the delay may have on the child."[5] "The superior court has broad discretion to grant or deny a continuance,"[6] but "[w]e will consider 'the particular facts and circumstances of each individual case to determine whether the denial was so

---

[4]     AS 47.10.088(d)(1), (e)(1).

[5]     AS 47.10.088(j); *see also* CINA Rule 18(e).

[6]     *Kailyn S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 420 P.3d 1232, 1233 (Alaska 2018).

unreasonable or so prejudicial as to amount to an abuse of discretion.' "[7] And an abuse of discretion is reversible error only if "a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling."[8]

When OCS petitioned for termination in December 2019, Elise had been in foster care for approximately 18 months. The trial was originally scheduled for July 2020, another 7 months, but was delayed until November because OCS could not find Violet to serve her notice. The court was statutorily obligated to deny a continuance unless Violet showed good cause.[9]

Violet contends that she did not have actual notice of the termination trial and that she had no opportunity to present evidence to dispute the termination of her parental rights. But Violet was at the October 2019 status hearing when termination was discussed; the December 2019 permanency hearing when OCS changed its recommendation from reunification to adoption; and the March 2020 status hearing when the termination trial date initially was set. Violet's argument that she did not know about the trial is unpersuasive.

The court pointed out that Violet had an opportunity to provide an explanation for her absence from the trial, but did not do so, and that she had known "for some time" that OCS was pursuing termination. Because the court properly found no

---

[7]     *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 912-13 (Alaska 2015) (quoting *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 259 (Alaska 1999)).

[8]     *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009); *see also Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012).

[9]     *See* AS 47.10.088(d)(1), (e)(1); CINA Rule 18(e).

good cause existed for further delay, it did not abuse its discretion by denying Violet's request to continue the trial.

## B.     Failure To Remedy Finding

Termination of parental rights requires a finding by clear and convincing evidence that the parent "has not remedied the conduct or conditions in the home that place the child at substantial risk of harm."[10]  "Whether a parent has remedied the conduct or conditions that placed the child in need of aid is a factual determination 'best made by a trial court after hearing testimony and reviewing evidence.' "[11] Parental rights may be terminated if the court finds that the parent "has failed . . . to remedy the conduct or conditions in the home that place the child at substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[12] "We have stated that '[f]indings of continued substance abuse and refusal to undergo treatment are sufficient to [show] failure to remedy.' "[13]

---

[10]     AS 47.10.088(a)(2)(A).  Whether the trial court's factual findings satisfy the requirements of the CINA statutes is a question of law that we review de novo. *Trevor M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 368 P.3d 607, 610 (Alaska 2016).

[11]     *Matthew H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 397 P.3d 279, 282 (Alaska 2017) (quoting *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)); *see also* AS 47.10.088(b) ("In making a determination under (a)(2) of this section, the court may consider any fact relating to the best interests of the child, including (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.").

[12]     AS 47.10.088(a)(2)(B).

[13]     *Haley B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*,
(continued...)

Violet became progressively less engaged after her relapse in July 2019 and the failed trial home visit, and she demonstrated no behavioral changes to suggest she was trying to remedy the circumstances that led to her losing custody of Elise. Violet did not seek treatment for her addiction; she did not stop using illegal substances; and she did not secure a safe home, as required by her case plan. Violet had two years to address her substance abuse.[14] When OCS first took custody of Elise, Violet said she wanted to seek treatment, but she did not follow through.

And even if Violet were in treatment for her drug addiction, she needed to also demonstrate an ability to keep Elise safe. She particularly needed "to understand boundaries with her parents." The trial court noted the "historical and ongoing domestic violence in [Violet]'s home" and the harmful impact "the chaotic and violent environment" had on Elise. "A parent's failure to remedy any one of the conditions that placed the child in need of aid leaves the child at risk of harm and therefore supports termination."[15] OCS required Violet to recognize the destructive nature of her relationship with her parents and to establish boundaries with them. But Violet failed to address the ongoing domestic violence in the home; at the termination trial Violet reported she had secured stable housing by moving back in with her mother. Violet failed to comprehend the safety risk her parents pose both to herself and to Elise.

---

[13]     (...continued)
No. S-16562, 2017 WL 4767710, at *5 (Alaska Oct. 19, 2017) (quoting *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1268 (Alaska 2014) (alteration in original)).

[14]     OCS removed Elise in July 2018, it filed the termination petition in December 2019, and the termination trial was held in November 2020.

[15]     *Matthew H.*, 397 P.3d at 282.

Permanency and stability are crucial for young children,[16] and "[a] child's need for permanence and stability should not be put on hold indefinitely while the child's parents seek to rectify the circumstances that cause their children to be in need of aid."[17] Elise had been in foster care for over two years and should not have had to wait longer to see if Violet would succeed at completing a recovery program[18] and securing a safe home environment. Violet pointed out that successfully overcoming addiction often takes multiple attempts, but she provided no evidence that she was seeking treatment. And even if she were, nothing indicates that she would succeed in a reasonable time. Evidence also demonstrated that Violet would not protect herself or Elise from Violet's parents. The record supports the superior court's finding that Violet failed to remedy the conduct or conditions placing Elise at substantial risk of harm, and we see no error.

## IV. CONCLUSION

We AFFIRM the superior court's decision terminating Violet's parental rights.

---

[16]     *Debbie G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 132 P.3d 1168, 1171 n.5 (Alaska 2006) ("We have often noted that young children require 'permanency and stability' or risk long-term harm." (quoting *Stanley B. v. State, Div. of Family & Youth Servs.*, 93 P.3d 403, 408 (Alaska 2004))).

[17]     *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 954 (Alaska 2013) (quoting *Kent V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 233 P.3d 597, 603 (Alaska 2010)).

[18]     *See Chloe T. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* No. S-16927, 2019 WL 324928 at *1 (Alaska Jan. 23, 2019) (finding it "reasonable for OCS to anticipate that [mother]'s attempts at recovery would fail; and that it was therefore in [daughter]'s best interests to be placed soon with a [person] . . . who was interested in adoption").