NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALICE H., | ) |
| | ) Supreme Court No. S-18186 |
| Appellant, | ) |
| | ) Superior Court Nos. 3PA-18- |
| v. | ) 00188/189/190/191/192/213 CN |
| | ) (Consolidated) |
| STATE OF ALASKA, DEPARTMENT | ) |
| OF HEALTH & SOCIAL SERVICES, | ) MEMORANDUM OPINION |
| OFFICE OF CHILDREN'S SERVICES | ) AND JUDGMENT* |
| and JERRY H., | ) |
| | ) No. 1913 – August 24, 2022 |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Megan M. Rowe, Alaska Legal Drafting, Anchorage, for Appellant. Aisha Tinker Bray, Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska. Megan R. Webb, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellee Jerry H. Rachel Levitt, Assistant Public Advocate, Palmer, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

---

\* Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

The Office of Children's Services (OCS) assumed custody of six children due to reports of neglect, substance abuse, and domestic violence. Initially neither parent engaged consistently in case planning activities. Over time the mother's engagement improved, and she participated in visitation with her children, substance abuse treatment, counseling, and urinalyses. The father's participation did not improve. Despite the mother's progress OCS remained concerned about her ongoing controlled substance use and continued relationship with the father, who had not addressed any of his behaviors that put the children at risk of harm. OCS ultimately filed a petition to terminate the parental rights of both parents; after extensive hearings, the superior court granted the petition. The mother appeals, arguing that the superior court clearly erred by finding that she failed to remedy the conduct causing her children to be in need of aid and erred by concluding that OCS made reasonable efforts to reunite the family. Because the record supports both findings, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Alice and Jerry have six children together: Ava, Carli, Kellan, Destiny, Savanah, and Hakim,[1] born from 2008 through 2018. Since 2008 OCS has received numerous reports concerning the family alleging neglect, mental injury, sexual abuse, and physical abuse.

In November 2018 OCS investigated a report of harm after Jerry tested positive for amphetamine and methamphetamine during a hospital visit. Shortly thereafter, Alice, then pregnant with Hakim, tested positive for amphetamine, methamphetamine, and marijuana on an oral swab.

---

[1]     We use pseudonyms throughout to protect the family's privacy.

OCS assumed emergency custody of the five older children, who at that time were not enrolled in school. Savanah and Destiny, then one and two years old, tested positive for amphetamine, methamphetamine, and marijuana upon removal. Destiny and Kellan had extensive cavities requiring surgery. In the weeks after the children's removal OCS attempted to set up case services with the parents, including visitation, substance abuse assessments, parenting classes, urinalyses, and hair follicle testing. OCS also initiated services for the children, including follicle testing, clothing vouchers, therapy, and dental work.

Hakim was born prematurely in December 2018 at two pounds six ounces. OCS assumed emergency custody of him while he was in the neonatal intensive care unit. Hakim remained in intensive care for three months, during which time his future foster placement took classes offered by the hospital and spoke with Hakim's doctors and nurses about assuming care of Hakim. During the months following his discharge, Hakim attended physical therapy, received feeding therapy, and participated in an infant learning program.

OCS created case plans for the parents in January 2019. Alice's listed goals were: (1) "avoiding the use of substances that prohibit her from providing for her children []," for which she needed to complete a substance abuse assessment, follow all treatment recommendations, and participate in regular urinalyses and hair follicle testing; (2) gaining parenting skills through visitation and parenting classes; (3) providing stable housing for her children; and (4) maintaining consistent contact with OCS. OCS updated Alice's plan in April to add a goal of "develop[ing] skills to understand domestic violence" and "provid[ing] her children a violen[ce]-free home," which required that she complete a domestic violence assessment and follow any resulting treatment recommendations. Jerry's case plan required an integrated substance abuse and mental health assessment, urinalyses, parenting classes, visitation, maintaining stable housing,

and keeping in touch with OCS. Neither parent engaged consistently with OCS or with goals and services identified in their case plans in the following months.

In June Alice relocated to Washington, where her participation in her case planning activities substantially improved. She completed a substance abuse assessment and participated in the recommended outpatient treatment for her diagnoses of moderate alcohol use disorder and mild tobacco use disorder. Alice further attended classes related to parenting and adverse childhood experiences. Jerry was incarcerated in Alaska in July 2019, but he joined Alice in Washington later that year following his release from custody. While in Washington Jerry tested positive for alcohol and controlled substances multiple times.

Alice and Jerry sought to have the children placed with them while living at Jerry's father's home in Washington. OCS referred the matter to Washington authorities under the Interstate Compact on the Placement of Children (ICPC), but they ultimately denied the placement request. OCS flew the parents back to Alaska for a visit with the children in February 2020.

OCS filed a petition to terminate parental rights in March 2020. The petition alleged that the children were in need of aid under AS 47.10.011 due to abandonment, risk of harm due to absence from the home, risk of mental injury due to domestic violence, neglect, parental substance abuse, and parental mental illness.[2]

Alice and Jerry returned to Alaska in April 2020. Later that month Alice completed a domestic violence assessment, during which the provider noted that Alice seemed truthful and "appear[ed] to have sufficient coping skills." The provider recommended couples' counseling, learning more about adverse childhood experiences, and accessing information about crisis resources. OCS noted that by May, Alice had

---

[2]     AS 47.10.011(1), (5), (8)-(11).

made significant progress in remedying her substance abuse and some progress in learning about domestic violence.

Alice was able to obtain housing and maintain consistent contact with her children and OCS once back in Alaska. She initially stayed with friends, and by October 2020 she had signed a lease on a three-bedroom apartment. Though it took some time after Alice returned for OCS to coordinate in-person visits with the children, by late 2020 she had visited with them in person multiple times.

Alice's participation in urinalyses and hair follicle testing, however, remained concerning. Between April and June 2020 she missed seven urinalyses, and she had previously missed twenty-three urinalyses between April and June 2019. She also tested positive for controlled substances twice during the time period leading up to and during termination proceedings. In September 2020 Alice's hair follicle test showed the presence of hydrocodone, following a no-show the week prior. And in April 2021, at the close of the termination trial, her hair follicle test came back positive for amphetamine and methamphetamine.

## B.    Proceedings

The trial on termination of Alice's and Jerry's parental rights began in September 2020 and spanned eleven days over the course of seven months. Alice, Jerry, the primary OCS caseworker, foster placements, and extended family members testified.

The primary OCS caseworker discussed her efforts to support Alice and Jerry in attempting to remedy their conduct. She also expressed her concerns about Alice's substance abuse and lack of progress in reaching some case plan goals, Jerry's lack of progress on his case plan, and Alice and Jerry's relationship. The caseworker testified that she made referrals for Alice and Jerry "for all aspects of their case plan[s]" and invited the parents to all of the team decision meetings (TDMs) and administrative reviews. She explained that she set up urinalyses for the parents both in Alaska and

Washington. She also described arranging in-person, telephone, and video visits for the parents throughout the case and testified that she "tried to engage parents in visitation when" they were inconsistent. The caseworker noted that she spoke with the parents "at least monthly."

In her testimony the caseworker admitted to some shortcomings in OCS's assistance to the parents. The caseworker testified that she gave Alice "some housing referrals" but could only name one resource she had provided and admitted that it was ultimately unhelpful. And despite agreeing that an OCS COVID-19 policy indicated that children under age three and their siblings should be allowed to have at least one in-person parental visit per week, the caseworker acknowledged that Alice was not provided in-person visitation opportunities outside of a therapeutic setting between her April 2020 return to Alaska and August 2020.

The caseworker testified about her concerns that although Alice had made progress, she had not completed her case plan and she continued to use controlled substances. The caseworker noted that she first referred Alice and Jerry to a domestic violence counselor in March 2019, but Alice did not see that provider until June 2020. She explained that Alice had not followed up on all of the counselor's recommendations, including couples' counseling. The caseworker also testified that Alice was not maintaining sobriety and it was "a huge concern" that Alice had a positive follicle analysis result for amphetamine and methamphetamine just prior to the close of trial.

When discussing Jerry the caseworker testified that he had not made much progress on his case plan. She explained that Jerry had not resolved his substance abuse, specifically noting that he had no-showed for all urinalyses since his return from Washington. She explained that Jerry did not have an in-person visit with his children between April 2019 and February 2020 and made no request to have visitation of any kind while he was incarcerated. Jerry had only visited Hakim once or twice in person

since his return to Alaska, and his participation in therapeutic visits with Carli was "[m]inimal to none." He did participate in telephonic visitation with the children, but the caseworker explained that his participation was sporadic, estimating that it was less than half that of Alice's. During his visits Jerry would often tell the children things that were not true, discuss finances, and make promises that he would not keep.

Given Jerry's lack of progress, the caseworker testified that she considered Jerry a safety threat. She further stated that Alice "doesn't seem to be able to recognize the signs, the symptoms, the issues if [Jerry] is using" controlled substances and that she did not "see a viable co-parenting option" between Jerry and Alice. In spite of this, the caseworker did not believe that Alice and Jerry would separate; Alice had insisted multiple times before that the two would separate, without lasting results. Although Alice claimed that she and Jerry had long been separated, the caseworker testified that during her visits to Alice's apartment, she noticed Jerry's truck in Alice's driveway and a men's razor and deodorant in the bathroom, and on one occasion she saw "what appeared to be a man's leg out from under the covers."

Alice testified at length about her substance use, relationships with her children, and interactions with OCS. Alice stated that she did not "have a substance abuse problem" and affirmed that she told her counselor the same while in treatment. She explained the positive hydrocodone result on the September 2020 hair follicle test by claiming she likely ingested one of Jerry's pills thinking it was an over-the-counter painkiller. She had no explanation for the positive result for methamphetamine and amphetamine from April 2021, but speculated she may have come into contact with the substances at work.

Alice agreed in her testimony that Jerry's drug use had impacted their family, noting that his hydrocodone use "broke our family apart a little bit." She speculated that Jerry's use was the source of Destiny and Savanah's positive hair follicle

tests. When asked what effect she thought substance use had on her children, she denied any impact on their school attendance, dental care, or physical health apart from Destiny and Savanah's exposure at the outset of the case.

Alice testified about some of her interactions with OCS and her experience working on her case plan. She indicated that despite establishing a case plan goal of obtaining stable housing, OCS gave her the name of only one housing resource, to which Alice applied. And although the domestic violence counselor recommended couples' counseling, Alice could not remember OCS giving her a referral.

The superior court issued its order terminating the parental rights of both parents in August 2021. It focused on the children's school attendance, dental issues, and parental substance abuse. The court found the children in need of aid due to abandonment by Jerry and substantial physical harm or risk thereof, neglect, and substance abuse by both parents.[3] The court also found that neither parent had remedied their conduct, such that return of the children to either parent would result in a substantial risk of harm, and that neither parent had remedied their conduct within a reasonable period of time. The court noted Alice's recent positive drug tests and stated that "[w]hile the court recognizes that [Alice], at least since April 2020, has made appreciable progress, the progress is not such that the court finds it appropriate to return the children to the home at this time. [Jerry], on the other hand, has made no progress in remedying the conduct."

The court further found by clear and convincing evidence that OCS had made reasonable efforts toward reunification, highlighting the case plans, referrals to a domestic violence counselor, substance abuse assessments, urinalyses, TDMs, and visits. The court found by a preponderance of the evidence that termination was in the

---

[3]     *See* AS 47.10.011(1), (6), (9), (10).

children's best interests. It noted that "[a]lthough [Alice] has made good progress since returning to Alaska, the likelihood of returning the children is marginal without significant and sustained engagement by [Alice] and her showing that she is able to care for all of her children."

Alice appeals. Jerry is participating as an appellee; he takes no position on the termination of his own parental rights but supports Alice's appeal of the termination of her parental rights.

## III.   STANDARD OF REVIEW

"Whether the parent has 'remedied the conduct or conditions . . . that place the child at substantial risk' . . . [is a] factual determination []" that we review for clear error.[4] "Clear error arises only when our review of the entire record leaves us with a definite and firm conviction that the superior court has made a mistake."[5] Whether OCS made "reasonable efforts to provide family support services designed to . . . enable the child[ren]'s safe return to the family home . . . . is a mixed question of fact and law"[6];

---

[4]      *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (first alteration in original) (quoting AS 47.10.088(a)(2)(A)).

[5]      *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 42 P.3d 1119, 1122 (Alaska 2002).

[6]      *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015).

"we review factual questions under the clearly erroneous standard and legal questions using our independent judgment."[7] "We bear in mind at all times that terminating parental rights is a drastic measure."[8]

## IV. DISCUSSION

Alice argues that the superior court clearly erred by finding that she failed to remedy the conduct or conditions that placed her children in need of aid and erred by holding that OCS made reasonable efforts toward reunification.[9] We disagree and affirm the superior court's rulings.

### A. The Superior Court Did Not Clearly Err By Finding That Alice Failed To Remedy The Conduct That Placed The Children In Need Of Aid.

When determining whether a parent has remedied the conduct at issue, the court considers "whether [the parent] ha[s] remedied the problems that placed [the] children at risk and gained the necessary skills so that the children could be safely returned to [the parent's] care."[10] "[C]ompletion of a case plan does not guarantee a

---

[7] *Ben M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 204 P.3d 1013, 1018 (Alaska 2009).

[8] *Christina J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 254 P.3d 1095, 1104 (Alaska 2011) (quoting *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003)).

[9] In her statement of points, Alice argued that the superior "court erred in finding that the state proved by clear and convincing evidence that the child is [in] need of aid as described in AS 47.10.011 subsections (6), (8), (9), and (10) by the mother." But Alice's opening brief does not raise this objection, either generally or as it specifically relates to substance abuse. Though her reply brief could be read to raise this point, because "the failure to raise an argument in an opening brief leaves the other party with no notice or opportunity to respond to the argument," we treat the issue as waived. *Hymes v. DeRamus*, 222 P.3d 874, 887-88 (Alaska 2010).

[10] *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*,
(continued...)

finding that" the parent has successfully remedied the conduct at issue.[11]   And "[a] parent's failure to remedy any one of the conditions that placed the child in need of aid leaves the child at risk of harm and therefore supports termination."[12]  The superior court may rely on a parent's history of substance abuse and relapse as a predictor of future behavior.[13]

Alice's principal objection to the superior court's failure to remedy finding is that the court clearly erred by finding that she and Jerry remained together at the time of termination.  But we do not read the superior court's failure to remedy finding as reliant on a determination that Alice and Jerry were still in a relationship.  The court noted in its factual findings that "[Alice] does not appreciate the danger that [Jerry] poses to the children," that "[t]here is evidence that suggests that [Jerry] was living in the residence with" Alice,  and that "[t]here is little evidence that [Jerry] is or will be out of her life."  However, the court did not make any specific factual findings regarding the status of their relationship.[14]  Moreover, when summarizing its decision to terminate the parents' rights, the court did not mention the relationship between the parents.  Rather,

_____

[10]     (...continued)
234 P.3d 1245, 1260 (Alaska 2010).

[11]     *Id.*

[12]     *Matthew H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 397 P.3d 279, 282 (Alaska 2017).

[13]     *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 74 P.3d 896, 902-03 (Alaska 2003).

[14]     *Cf. Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 789-91 (Alaska 2019) ("[T]he court's subsequent termination order simply states that there was some evidence to support a neglect finding . . . . The court did not make any specific factual findings in its order related to neglect, and significantly, the court did not find neglect by clear and convincing evidence . . . .").

the court focused on Alice's recent positive drug tests and her failure to engage in recommended services for a significant portion of the case.

Given Alice's history of substance abuse and recent positive drug tests, the superior court did not clearly err by finding that she failed to remedy her substance abuse that placed the children in need of aid. At the time the children were removed, while Alice was pregnant with Hakim, she tested positive for amphetamine, methamphetamine, and marijuana. Savanah and Destiny, then one and two years old, also tested positive for those substances. At trial, Alice acknowledged that exposure to methamphetamine and amphetamine is "life-threatening" for young children and "can damage their growth, their brains, [and] their ability to learn."

Though Alice underwent a substance abuse assessment and treatment, she was inconsistent in attending urinalyses and at times tested positive for controlled substances. She had one positive test result for hydrocodone the week before the termination trial began and another positive result for amphetamine and methamphetamine at the close of trial, the same substances to which Savanah and Destiny had been exposed before removal.[15] The superior court specifically found Alice's explanations for these positive test results unpersuasive. Despite Alice's engagement in treatment, the superior court did not clearly err by finding the changes in

---

[15]     *Cf. id.* at 789-90 (determining that superior court clearly erred by finding father had not remedied substance abuse given his two years of sobriety, among other factors). We note that we have upheld findings that parents failed to remedy substance abuse even when the parents demonstrated some period of sobriety. *See Sherry R.*, 74 P.3d at 902-03 (affirming finding that mother had not remedied substance abuse despite being sober for about a year); *Barbara P.*, 234 P.3d at 1261 (affirming finding that mother failed to remedy substance abuse despite being sober for about six months).

her behavior insufficient to remedy the substantial risk to the children caused by her substance abuse. The superior court thus did not clearly err in its finding that Alice failed to remedy the substance abuse that placed her children in need of aid.[16]

Alice also contends the superior court's language that it would be unsafe to return the children to her care "at this time" indicates that termination was premature and that she could have made additional progress that would have made it safe to return the children to her care if given more time. We disagree with Alice's argument that the court's choice of words undercuts its finding that Alice failed to remedy the conduct that placed her children in need of aid. Moreover, the argument fails to acknowledge that OCS need only demonstrate that a parent has either failed to remedy the conduct at issue *or* failed to remedy that conduct "within a reasonable time."[17] At the time of the superior court's termination order, the children had been in OCS custody for over two and a half years. Given the totality of the circumstances, it was not clearly erroneous to find that Alice failed to remedy her conduct within a reasonable time.[18]

**B.     The Superior Court Did Not Err By Determining That OCS Made Reasonable Efforts To Support Reunification.**

Alice argues that the superior court erred in determining that OCS made reasonable efforts to support reunification.[19] OCS must "make timely, reasonable efforts

---

[16]     Given our determination that Alice failed to remedy her substance abuse and the related risk to her children, we need not address the superior court's remaining failure-to-remedy findings. *See Matthew H.*, 397 P.3d at 282.

[17]     *See* AS 47.10.088(a)(2)(B).

[18]     *See* AS 47.10.088(b).

[19]     Alice also contends that "[a]s a constitutional matter, the [superior] court was required to consider the least restrictive alternative prior to permanently terminating [her] parental rights," citing *In re S.D.*, 549 P.2d 1190, 1200-01 (Alaska 1976). But that

(continued...)

to provide family support services to the child and to the parents . . . to enable the safe return of the child to the family home."[20]  In meeting its obligation to provide reasonable efforts to families, OCS must "identify family support services that will assist the parent . . . in remedying the conduct or conditions" that rendered their child in need of aid, actively offer and refer the parent to those services, and document its efforts.[21] "Reunification efforts need not be perfect; they need only be reasonable under the circumstances" taking into account the parent's history, participation in treatment, cooperation, and prior services provided by OCS.[22]

The record supports the superior court's conclusion that OCS made reasonable efforts to support reunification.  OCS began providing support to the parents about a week after the initial removal.  Throughout this case OCS made and periodically updated case plans for the parents.  OCS provided referrals for relevant services, including substance abuse assessments, urinalyses and hair follicle testing, parenting classes, and domestic violence counseling.  OCS also facilitated visits with the children and involved the parents in TDMs.  OCS spoke with the parents "at least monthly if not

---

[19]     (...continued)
decision did not establish a constitutionally mandated least-restrictive-alternative test for terminating parental rights; rather, the cited language refers only to one party's argument — not our ultimate conclusion. *See id.*  We thus reject Alice's argument that *In re S.D.* requires the superior court to conclude as a constitutional matter that termination is the least restrictive alternative.

[20]     AS 47.10.086(a).

[21]     AS 47.10.086(a)(1)-(3).

[22]     *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015).

more" and "tried to engage parents in visitation when" their visitation was inconsistent. OCS further initiated therapy for three of the children, including therapeutic visits designed to involve the parents in the children's emotional progress.

Despite these efforts, neither parent engaged with OCS or in recommended services during the first eight months of the case. For instance, OCS first recommended substance abuse assessments in or before January 2019. But Alice did not obtain a substance abuse assessment until October 2019, did not attend parenting classes until she moved to Washington, and did not undergo her domestic violence assessment until June 2020. Jerry also did not attend parenting classes or most of his urinalyses in the first months of the case, and he only obtained a substance abuse assessment once the termination trial was underway. Similarly, when OCS offered visits with Hakim in 2019, the parents declined, refusing to visit Hakim unless they could simultaneously visit all their children.

OCS demonstrated additional efforts toward reunification by helping the parents access resources and by facilitating visitation once the parents moved to Washington. OCS set up services for Alice within a month of her move, including finding providers and arranging for urinalyses. At Jerry and Alice's request, OCS initiated the ICPC process to explore placement of the children with them in Washington. In February 2020 OCS flew Alice and Jerry to Alaska from Washington for an in-person visit, and OCS facilitated video and telephonic visits when the parents were living in Washington.

The efforts continued once the parents returned to Alaska, even after OCS petitioned for termination of parental rights. OCS set up urinalyses and hair follicle testing for the parents on their return, facilitated visits with the children, and discussed appropriate housing with Alice.

OCS's efforts were not perfect: the caseworker admitted that she failed to

tell Alice that she could attend the children's regular checkups, that she gave Alice just one housing referral which proved unhelpful, and that OCS failed to arrange in-person visits during summer 2020 despite policy indicating such visits should be prioritized. But the efforts need not be perfect, and OCS demonstrated significant efforts to help Alice remedy her conduct and reunify the family as a whole.

We therefore conclude the superior court did not err in determining that OCS's efforts toward reunification were reasonable under the circumstances.

## V.    CONCLUSION

We AFFIRM the superior court's order terminating Alice's parental rights.